UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY SCHNEIDER, | ) | CASE NO. 1:18CV1624 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| ANDREW M. SAUL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Beverly Schneider ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on December 3, 2018, Plaintiff asserts that the administrative law judge ("ALJ") failed to give good reasons for not adopting the opinion of her treating physician, Dr. Nair, and failed to provide a residual functional capacity ("RFC") that was supported by substantial evidence. ECF Dkt. #12. On March 15, 2019, Defendant filed a brief on the merits. ECF Dkt. #15.

For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

# I. FACTUAL AND PROCEDURAL HISTORY

On January 29, 2015, Plaintiff protectively filed an application for DIB alleging disability beginning November 20, 2012 due to degenerative disc disease, arthritis in back and knees, pinched nerves, bulging discs, sciatica, and problems associated with L4 and L5 vertebrae. ECF Dkt. #10 at

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

107-08, 244, 251, 308.[2] Plaintiff's application was denied initially and upon reconsideration. *Id.* at 133-38, 141-52. Following the denial of her application, Plaintiff requested an administrative hearing, and on November 9, 2016, ALJ Cheryl Rini conducted the hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 29, 153. At this hearing, ALJ Rini suggested for Plaintiff to amended her alleged onset date to January 14, 2016, or her 50th birthday. *Id.* at 58, 283. Plaintiff subsequently amended her alleged onset date to January 14, 2016. *Id.* at 283-85. ALJ Rini did not render a decision because she left the Cleveland office, and, therefore, a second hearing was held on September 8, 2017 before a different ALJ, Judge Joseph Hajjar. *Id.* at 60; *see* ECF Dkt. #12 at 2. Plaintiff testified at this hearing, with counsel present, and a different VE also testified. *Id.* at 60-61. On November 14, 2017, the ALJ issued a decision denying Plaintiff's application for DIB and SSI. *Id.* at 10-23. Plaintiff requested a review of the hearing decision, and on November 14, 2016, the Appeals Council denied review. *Id.* at 1-4, 241-43.

On July 16, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On October 1, 2018, Defendant filed an answer. ECF Dkt. #9. Plaintiff filed a brief on the merits on December 3, 2018. ECF Dkt. #12. On March 15, 2019, Defendant filed a merits brief. ECF Dkt. #15.

## II. MEDICAL AND TESTIMONIAL EVIDENCE

### A. Medical Evidence

Plaintiff's amended disability onset date is January 14, 2016. Tr. at 283. Her extensive medical history dates back to an MRI from June 2004 of her spine, showing severe L5 degenerative disc disease with bilateral L5 foraminal stenosis. *Id.* at 522-24.

Plaintiff's physician-patient relationship with Dr. Priti Nair, M.D., began on January 3, 2011 when Plaintiff was referred with regard to lower back pain. *Id.* at 466. Plaintiff reported being

---

[2]All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

2

treated primarily with narcotics and that her pain in the low back traveled down the posterolateral buttocks/thigh region to the calf bilaterally. *Id.* Throughout 2011 to 2016, Plaintiff continued consulting with Dr. Nair, reporting lower back pain and pain radiating into her lower extremities to which Dr. Nair treated with chronic narcotic pain medication. *Id.* at 355, 360, 365, 370, 375, 380, 385, 390, 395, 400, 405, 409, 414, 419, 424, 428, 431, 436, 438, 440-41, 443, 446, 448-58, 460-65, 480, 485, 491, 496, 501, 504, 509, 514, 526, 529, 532.

On May 27, 2011, Plaintiff reported increased pain and rated it a 9 on a scale of 1 to 10 in the low back region. *Id.* at 460. Dr. Nair adjusted her medication, which Plaintiff reported in a July 26, 2011 follow up visit that the new dosage reduced her pain levels to a 2 on a scale of 1 to 10. *Id.* at 458, 460. Dr. Nair also reported that she was concerned that Plaintiff may have a substance abuse problem. *Id.* at 458, 460. On August 23, 2011, Plaintiff reported increased and intermittent sharp pain in her right lower extremity starting from the back down the posterior buttock and thigh region to the mid calf. *Id.* at 457. In October and November of 2011, she presented for follow-up visits, reporting pain scores of 4 and 3, respectively. *Id.* at 454-55.

Her pain score in January 2012 was 3, and during this visit, Dr. Nair concluded that Plaintiff had mechanical low back pain with occasional lower extremity pain, appearing to be sacroiliac in region, after reviewing recent x-rays and electrodiagnostic testing results. *Id.* at 453. During a follow up visit in February 2012, Dr. Nair reported that Plaintiff reported no lower extremity pain since she started taking Neurontin. *Id.* at 452. In March 2012, Dr. Nair reported that Plaintiff was doing well and her back pain was rated a 3 on a scale of 1 to 10. *Id.* at 451. Plaintiff reported a pain score of 4 during an April 2012 follow-up visit, and she had not had any recent physical therapy due to transportation issues. *Id.* at 450. During a June 2012 follow-up, Dr. Nair reported that Plaintiff went to a chiropractic office, but she recommended for Plaintiff to instead start physical therapy. *Id.* at 449. By September 2012, Plaintiff reported worsening pain in her back and lower extremities, with a pain score of 4. *Id.* at 446.

On December 6, 2012, Plaintiff presented for another follow-up with Dr. Nair, in which she reported that she stopped working because it was causing exacerbation of her symptoms of low back

3

pain. *Id.* at 443. Plaintiff also reported that she was feeling better since she stopped working, but her pain score was a 7. *Id.*

On January 24, 2013, Plaintiff presented for another follow-up for her low back pain, reporting a pain score of 7 and the pain starts in her back and travels down the posterior buttock and thighs bilaterally, worse with coughing and sneezing. *Id.* at 441. In February 2013, Dr. Nair performed an electrodiagnostic test due to increased numbness and pain in the right lower extremity and because Plaintiff's insurance did not authorize an MRI of her lumbar spine. *Id.* at 440. Her EMG study was essentially normal, there was no radiculopathy noted in an L5 distribution, and there was no peripheral neuropathy noted either. *Id.* Therefore, Dr. Nair elected to treat Plaintiff conservatively rather than send her for epidural blocks, and adjusted her medication to an increased dose of Neurontin and started her on Elavil. *Id.* In March 2013, Plaintiff reported substantial improvement due to her new medication regimen, including sleeping better at night and reduced radiocular pain during the daytime. *Id.* at 438.

During a March 2014 visit, Dr. Nair noted that Plaintiff obtained a low back brace for her chronic low back pain. Id. at 404. On June 23, 2014, Dr. Nair reported that she discussed with Plaintiff the option of starting physical therapy including aquatics to help her low back and bilateral knee pain and to assist with weight loss. *Id.* at 390. However, Dr. Nair noted during an October 2014 visit that Plaintiff had not yet started aquatic physical therapy. *Id.* at 375. In December 2014, Plaintiff reported increased stiffness in her lower back with a pain score of 3 for which Dr. Nair prescribed Naprosyn. *Id.* at 365, 369.

During a February 2015 visit, Plaintiff presented with increased pain in her midthoracic region and upper lumbar region involving the paraspinals. *Id.* at 360. Dr. Nair administered trigger point injections for myofascial pain. *Id.* at 364. Dr. Nair also noted that Plaintiff had applied for disability benefits. *Id.* at 360. In March 2015, Plaintiff's pain levels returned to baseline levels due to the trigger point injections from the prior visit, and Dr. Nair discontinued the Naprosyn. *Id.* at 355. In May 2015, Plaintiff, in addition to her regular complaints of low back pain, she also reported mid-back pain in the periscapular region bilaterally. *Id.* at 485. In July 2015, Plaintiff reported a new problem with pain in the lateral aspect of the left hip and buttock region that is worse when she lays

on the left side. *Id.* at 480. She stated that the pain had been ongoing and intermittent but the symptoms had recently become more prominent, with pain traveling down the lateral aspect of the leg from the hip to the knee. *Id.* During that visit, she received a hip injection for the osteoarthritis and bursitis of the left hip and sacroiliac sprain/sprain injury. *Id.* at 483-84. In August 2015, Plaintiff reported during a follow-up visit that the hip injection from her last visit alleviated all of her symptoms of lateral hip pain and that her back pain was stable on current medications. *Id.* at 514. Dr. Nair also increased Plaintiff's dose of Topamax. *Id.* at 509, 514. During an October 2015 visit, Patient reported that she was doing well on her current dose of medication and had substantial improvement in her pain levels, mood, and affect. *Id.* at 509. Dr. Nair also noted that Plaintiff may require surgical intervention in the future, but that Plaintiff would like to wait until symptoms progress or when she is older before having surgical intervention. *Id.* at 513. During a December 2015 visit, Dr. Nair reported that Plaintiff's low back pain was stable but also that Plaintiff had significant weight loss. *Id.* at 504.

On January 26, 2016, Plaintiff was contacted to visit Dr. Nair's office for a random pill count as part of routine management of chronic narcotic therapy. *Id.* at 501. Pill counts were as expected. *Id.* On February 4, 2016, Plaintiff presented for a follow-up visit in which she reported increased pain and stiffness in her lumbar paraspinals and in her knees first thing in the morning, lasting about thirty minutes. *Id.* at 496. Dr. Nair administered trigger point injections for myofascial pain. *Id.* at 500. In April 2016, Plaintiff presented for another follow-up visit in which Dr. Nair noted she had bilateral knee pain patellofemoral syndrome. *Id.* at 491. Plaintiff received X-rays as well and the results were normal. *Id.* at 491, 495. In August 2016, Plaintiff presented with complaints of chronic pain and her history of her then-present illness was noted as including "LBP" (likely low back pain), headache, and the quality of her pain was described as aching. *Id.* at 532. Plaintiff reported a pain level of 5 on a scale of 1 to 10. *Id.* at 533. Dr. Nair discussed a weight loss program to help with Plaintiff's low back pain and bilateral knee and recommended for her to continue on her current regimen. *Id.* at 534.

The same complaints of pain and recommendations as in her prior visit were noted in a September 26, 2016 visit as well. *Id.* at 526-28. On this same date, Dr. Nair filled out a Physical

5

Residual Functional Capacity form regarding Plaintiff. *Id.* at 520-21. Based on Plaintiff's lumbar degenerative disc disease, Dr. Nair opined the following: Plaintiff's maximum ability to lift/carry on an occasional basis (no more than 1/3 of an 8 hour day) was "20#" ("#" likely refers to pounds); her maximum ability to lift/carry on a frequent basis (1/3 to 2/3 of an 8 hour day) was 10#; her maximum ability to stand/walk (with normal breaks) during an 8 hour day was about 2 hours; and her maximum ability to sit (with normal breaks) during an 8 hour day was about 4 hours. Id. at 520-21. She further opined that if Plaintiff must periodically alternate sitting, standing, or walking to relieve discomfort, she can sit or stand about 10 (minutes) before changing position, and Plaintiff will need to lie down at times at unpredictable intervals during a work shift due to low back pain. *Id.* at 520. Based on Plaintiff's low back pain and MRI of the lumbar spine, Dr. Nair opined that Plaintiff has no limitation for reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), and feeling, but she can push and pull less than occasionally. *Id.* at 521. Finally, she opined that she would anticipate that Plaintiff's impairments or treatment would cause Plaintiff to be absent from work approximately more than 3 times per month. *Id.*

During an October 2016 visit, Plaintiff again complained of chronic pain, but Dr Nair noted that her low back pain was stable on current medications and the Naprosyn had been helpful for additional pain that was noted in her last visit. *Id.* at 529.

### B. Testimonial Evidence

At the hearing held on September 8, 2017, Plaintiff, with counsel present, and a vocational expert ("VE") testified. Tr. at 60. Upon questioning of the ALJ, Plaintiff testified that she lives alone. *Id.* at 66. She further testified that she last worked as a waitress in 2012, where she worked part-time for a couple of months. *Id.* at 67-69. She also stated that during this job she typically would lift and carry about 20 to 30 pounds. *Id.* at 68. When directly asked what prevents her from currently working, Plaintiff answered: "I have degenerative disc disease and my lower back hurts most of the time and I have bad knees. I have arthritis in my knees also, so I can't do a lot of walking. I can't stand for a long period of time either. I just discovered this new pain in my arm. . . ." *Id.* at 73. Regarding the left shoulder, Plaintiff testified that she had seen her doctor around December 2016 or January 2017 and had an MRI done that showed it was caused by swelling and bursitis. *Id.* at 74.

Plaintiff stated she had not yet had her shoulder treated but her doctor planned on giving her an injection during her next visit. *Id.* at 75.

The ALJ then asked what treatment Plaintiff receives for her back, to which Plaintiff responded that she is on medication and periodically gets injections. *Id.* at 75-76. She also testified that in addition to the medication and injections, she lays down during the daytime, uses a heating pad, sometimes takes a hot bath, and uses a brace that her doctor gave her. *Id.* at 76.

Upon examination by her attorney, Plaintiff testified that her low back pain is worsened by bending, lifting, and walking far distances (for longer than about half an hour). *Id.* at 80. She also stated that her ability to stand in one place is affected by her back or knee pain after about 15 minutes and the pain radiates down both of her legs. *Id.*

### III. **RELEVANT PORTIONS OF THE ALJ'S DECISION**

On November 14, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 10-23. The ALJ stated that Plaintiff had not engaged in substantial gainful activity since January 29, 2016, the date of her application. *Id.* at 16. Continuing, the ALJ determined that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 17.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations: can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; can stand, walk, and sit for 6 hours each of an 8-hour workday; can climb ramps and stairs occasionally, but never ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can never work at unprotected heights or near moving mechanical parts. *Id.* at 18.

The ALJ then stated that Plaintiff had no past relevant work, was an individual closely approaching advanced age on the date the application was filed, had at least a high school education, and could communicate in English. *Id.* at 20-21. Next, the ALJ indicated that the transferability of

jobs skill was not an issue because Plaintiff did not have past relevant work. *Id.* at 21. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 29, 2015, the date the application was filed. *Id.* at 22.

### IV.     STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### V.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this

Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## **VI.**    **LAW AND ANALYSIS**

Plaintiff asserts that the ALJ violated the treating physician rule by failing to give good reasons for not affording controlling weight to the opinion of Dr. Priti Nair, her treating pain management physician. ECF Dkt. #12 at 6.

An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p, 1996 WL 374188, at *5 (1996); 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."SSR 96-2p, at *5. This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214,

---

[3] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c); *see also* 20 C.F.R. §416.927(c). Although an ALJ must consider all of the factors in 20 C.F.R. § 404.1527(c), he is not required to discuss every factor in his decision as long as he provides "good reasons." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted).

Plaintiff asserts that the ALJ failed to provide good reasons for not affording controlling weight to Dr. Nair's opinions. ECF Dkt. #12 at 6, 9-10. Specifically, Plaintiff reasons that (1) Dr. Nair is a treating physician and there are no competing or contradictory opinions from another examining source, (2) the ALJ's decision is devoid of any identification of other credible, contrary evidence in the record to support his conclusions, (3) Plaintiff's living alone is not a good reason

to reject Dr. Nair's opinion, and (4) the ALJ did not discuss the factors listed in 20 C.F.R. §404.1527(c)[4]. *Id.* at 9-10.

The undersigned recommends the Court should find that the ALJ provided good reasons for the weight that he attributed to Dr. Nair's opinions. The ALJ reviewed and addressed Dr. Nair's opinion in his decision. Tr. at 16-20. First, the ALJ summarized Dr. Nair's opinion of September 26, 2016, noting that she opined that Plaintiff's low back pain restricted her to light work with additional exertional and nonexertional limitations. *Id.* at 20 (citing Tr. at 519-21). He also mentioned Dr. Nair's specific opinion that Plaintiff had chronic back pain that restricted her to standing and walking limitations for about two hours each in an eight hour workday, and sitting limitations, pushing and pulling light weights on less than occasional basis, and alternating sit-strand options every ten minutes at-will. *Id.* (citing Tr. at 520). He also considered Dr. Nair's opinion that Plaintiff would be absent more than three days per month. *Id.* (citing Tr. at 521).

The ALJ stated that he gave partial weight to Dr. Nair's opinion to the extent that she did not mention any functional effects from the Plaintiff's bilateral knee impairment (which she diagnosed clinically based on the Plaintiff's allegations of early morning stiffness) and obesity. *Id.* He gave limited weight to her opinion about the specific functional limitations from Plaintiff's low back pain because he found that they were not consistent with Plaintiff's generally normal musculoskeletal and neurological test results secondary to the amerliorative effects of her conservative treatment modalities. *Id.* (citing Tr. at 490-518, 519-21,525-34). The ALJ specifically found that, in March 2015, Plaintiff was living with her son, but by the most recent hearing date (September 8, 2017), she testified she was living alone, indicating that she had become more independent over the course of the current adjudicating period. *Id.* (citing Tr. at 66, 323-31; SSR 16-3p). Therefore, the ALJ stated that he gave only partial weight to Dr. Nair's treating source opinion to the extent that it is consistent with the totality of the medical evidence, which demonstrates the non-severe effects of the Plaintiff's obesity and bilateral patellofemoral syndrome. *Id.* (citing Tr. at 490-518, 519-21, 525-34).

---

[4] Plaintiff cites to 20 C.F.R. §404.1527(d)(2) on page 10 of their brief, but on page 7 of their brief, Plaintiff cites to 20 C.F.R. §404.1527(c)(2) and *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (2004), which does list factors when considering the opinion of a treating physician.

Each of the ALJ's statements about how much weight he gave to Dr. Nair's opinion was followed by specifically cited evidence to support his conclusions. The ALJ did discuss some of the relevant factors from 20 C.F.R. §404.1527(c). He primarily discussed supportability, consistency, and other factors when he cited to the fact that Dr. Nair's opinion did not mention any functional effects from Plaintiff's bilateral knee impairment or obesity, Plaintiff's "generally normal musculoskeletal and neurological test results," her "conservative treatment modalities," and her living situation that suggested greater independence. Tr. at 20. As mentioned earlier, the ALJ is not required to conduct an exhaustive factor-by-factor analysis. *Francis*, 414 F. App'x at 804.

Accordingly, the undersigned recommends that the Court find that the ALJ gave good reasons for such a determination and these reasons are supported by substantial evidence.

## VII. RECOMMENDATION AND CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: July 16, 2019           */s/George J. Limbert*
                              GEORGE J. LIMBERT
                              UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).